. Seconded by Miss Rachel Koenig. May it please the court, Sonia Kerr, Fred Collins, Heather B., and the child, S.S., who join us here today. S.S. has been blind since birth. She was initially identified as a toddler by the Houston schools and received some special ed services before her parents placed her in private school. From about 2010 forward, she did not receive special education services. She was in a private school. She was in a private school, that's correct, Your Honor. What school was that? She was initially in a preschool called Bertha Alice in 2010, and then she went to the School for Young Children from 2012 to 2016, and the Joy School from 2016 to 2018. Your Honor, we start with the statute, and if I can briefly explain, the statute we call the General Child Fine Statute. This is the one that's at 20 U.S.C. 1412 A3A, and it states all children with disabilities residing in the state, including children with disabilities who are homeless, warrants of the state, and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated, and a practical method is developed and implemented to determine which children with disabilities are currently receiving special education and related services. This court, in reliance on the Forrest Grove case from the Supreme Court, in the Fifth Circuit Craywitz case, held that public school districts have the obligation to identify, locate, and evaluate all children with disabilities within a reasonable time, and to take proactive and appreciable steps, and this court has already held that the IDEA, the Individuals with Disabilities Education Act, imposes this child fine obligation upon school districts and not the parents of disabled students. Likewise, the Fifth Circuit in Spring Branch v. O.W. discussed a delay of some 99 days in eligibility determination, and recognized that a state must have policies under the statute I just read, and this court, once again, in D.C. v. Klein referenced that the Here, the lower court erred because the lower court shifted the burden of having this expansive child fine system onto the shoulders of the parents. The court below did not follow the language of the statute. The court below did not follow the Craywitz line of cases. The court below made excuses for Houston and for Pearland, and ignored the paltry approach of child fine, if any, that the state of Texas had at the time. The lower court also erred because it denied plaintiffs a Rule 30b-6 deposition, one deposition we requested of the Texas Education Agency on whether or not they had this practical method in place, which from everything we've seen, and is in the record, does not appear to exist. Counsel, I see your claims as basically in three parts. Some are against the state agency, TEA. Some are against the Houston HISD. Some are against Pearland PISD. So my first question is, if your child, excuse me, child fine claims against Houston and Pearland were to fail for whatever reason, does that mean your claims against the state also fail? I'm trying to understand if they're tied together. No. The state agency has two primary duties. One is child fine, but along with that is the state's obligation of general supervision. The general supervision statute is found at 1412A11, and it says the state is responsible for ensuring that the requirements of this part are met and all educational programs for children with disabilities in this state, including all such programs administered by any other state agency, are under the general supervision of the state and meet the state standards. Texas Education Agency failed its duties, and we have to start with the language of the statute that places the duties on the single line of authority, the Texas Education Agency. The court below erred because the court looked at, did the parents do this? Did the parents do that? Did the parents give notice? Did the parents give timely notice? Did the parents write the correct person? This court, the Fifth Circuit, has repeatedly held child fine is not placed on the shoulders of the parents, nor can it be because the statute itself, the plain language of the statute, places the duty on the educational agencies. What were the agencies supposed to do here? The agencies were required to do two things, Your Honor. First, there was to be a system, a practical method, which means what? Which means that there's a process of some kind. I don't want to know your general arguments because I think we know the general lay of the law. What specifically were the school districts supposed to do when they were aware that this young lady was visually challenged? The first thing the school districts should have done was to determine if she had previously been evaluated and found eligible, which she had been. Houston had those records from prior time. Once you're eligible, nothing in the IDEA says you magically become no longer eligible. Second, they should have given a notice to the parents. Whether or not the child is in a private school or not, there should have been a notice of some kind by Houston during the time the family had the child in Houston and was living in alternatively in Pearland once the child was in Pearland but attending in Houston. A notice to the parents and a sample of a notice like that you can find in the record, which ironically the family received after, long after. Are you saying there wasn't a system or are you saying the system that exists was dysfunctional as to your client? Well, we're not clear that there was a system at all. I mean, what's your cutting to the chase argument here? Cutting to the chase answer is that the system was not in place nor implemented with regard to children in private school. If it had been, then there would have been some type of notice sent to the parents proactively because their child was in private school, because that child had previously been identified. Okay, you're from Austin. Suppose some people have put a child like this one at St. Mark's Preschool, right? Isn't that one of the premier places in Austin? Is it your contention that the state of, that whatever the Austin Independent School District is that encompasses that, is supposed to go to the premier preschool in the city where the parents have sent a kid with certain challenges and say, here we are, maybe your kid can do better in public school? Is that the point? No. What they're supposed to do is more like this, Your Honor. If we look at in the record at 2020, there's an August 2018 letter that Pierlin sent out long after this dispute was already in effect, 2018. And the letter says, dear parent, we understand your child is not in public school and you live in our district. Here's who you can contact to have your child evaluated. If your child has already been evaluated, there's a three-year renewal type process and please contact us. That's what's supposed to happen. That didn't happen to this family. That is precisely what I just asked you about. So the kid is at St. Mark's? And does that mean that the school district is required to send out some kind of precautionary notice to every child that it knows resides in the district and does not go to the public school? Every parent? Yes. How do they know who those people are? People live in apartments. They move around. They move in and out of the district. How is that even feasible? It's very feasible. In a surveillance state, perhaps, but explain it to me, please. I don't think it has to be a surveillance state, Your Honor, for two reasons. One, the state of Texas has a policy of tracking children from birth who are blind. This is the VI registry? This is the VI registry, okay? And the VI registry is kept by the Texas School for the Blind. That VI registry has the child's name, address, et cetera. Once you're born and you're blind, you're supposed to be on that registry. For some unknown reason, our student was taken off. The parents didn't know that happened. But in any effect, that is one easy resource for children who are blind. So we're talking about Pearland here because you mentioned Pearland's notice letter. Let's assume you're right about the VI registry. How would that registry have informed Pearland ISD that the child was in the district and likely in need of services? Well, the registry in her case had been disrupted as well. She didn't stay on the registry, and we don't know why. But Pearland would have known, could have known, because in January of 2016, the parents wrote Pearland and Houston. Now, there's this debate about whether— I was going to ask about that. So that's a more concrete notice than the VI registry. And you're disputing because to answer, I mean, to Judge Jones's question, I thought your answer was going to be that the child's fine duty is triggered. It's got to be triggered by something. And the parties are arguing about what is the appropriate notice that Pearland had. So what's your argument about what's the right date, I guess? Well, the right date, we believe, is June 2014 when the child moved from Houston. Okay, but moving—that goes to Judge Jones's question as well. Just moving, how could that notify Pearland? Well, because the system was dysfunctional and was not set up, what should happen, what happens regularly in other states, is a child has been identified as she was in Houston. That information, school records are usually routinely transferred. So what's your best case for the proposition that moving into the district should trigger the child fine notice? Moving along, nothing further. Because the notice does not have to come from the district or from the parents. Right, I know. What's your best story for that proposition? Forest Grove and Kraywitz. So the notice that the student was moving into Pearland should have prompted something in Pearland to catch up with that child because Pearland had a duty to find the children in private school and within its district. So Pearland's answer at the time was a parent-dependent system. Their administrator, Ms. Wilson, testified, well, we just wait and see if parents call. And then, you know, if we don't get to them, they have to call back. That's not proactive. So the moving that you're talking about happened in January 2016? Moving happened in June of 2014. I'm sorry, June 2014. And I guess I'm thinking of the email to Ms. Yancey. Yes, that's in January 2016. So the parties are arguing about whether that's sufficient notice because Ms. Yancey evidently resigned soon after she got the email. So what's your argument about that? Is it that notice? First of all, again, we don't think notice depends on the parents. But assuming the question is whether the email gave Pearland sufficient notice, once the parents wrote in June of 2016, after having already contacted other state agencies, which is critical because there's no coordination between these agencies, but once they wrote, they wrote to both districts. So if, in fact, Pearland didn't get the notice, there was no system set up by which Houston would have automatically contacted Pearland and say, hey, did you get this email about this child? They've written both of us. That didn't happen. That responsibility to proactively reach out to this child was left with the parent as opposed to anyone from Houston contacting Pearland because they got the memo even if there's debate about whether Pearland did. Let's assume for the sake of argument that we think the January 2016 email is the correct notice date that starts the child, that triggers the child fine duty. What result then? Because I don't think the district court relied on that date. I don't think the district court agreed with you on that point. I don't think the district court relied on that date. Right. They put it back on the parents. Well, I understand your argument, but I'm talking about a notice date. Give me your argument for why the child fine duty is not satisfied by Pearland based on that date, January 2016. Well, Pearland took no action. Until? Pearland took no action to respond to the parent at all from January 16 until they were recontacted in May of 2017. Okay. So that's a year. You're saying that's not a reasonable time period. That is not a reasonable time. Under any of this circuit's cases, that is not reasonable. I just want to understand your argument on that. Yeah. And effectively, that year and a half, the child was not given any individualized education plan. She was in a private school, was she not? She was. However, if a child is in a private school, the evaluation is completed, and then typically what happens is the parents are told, okay, we have the evaluation completed. Either district can complete the evaluation. And then the parents— What is the end point of this litigation? Is it your goal to—is it your client's goal to get these agencies to reimburse what? The point of the litigation initially was to establish eligibility, which we did not have when we filed for hearing. The goal of the litigation at this juncture is compensatory services that are fair to put this child in the position she would have been in had this not occurred. And that may include services such as compensatory type of services. That could include tuition reimbursement. It should include a system that is a— Tuition reimbursement, it sounds like it's not exactly remedial because she's been in school, has she not? She is in school at Perkins at the moment. She's— In Massachusetts. In Massachusetts, yes. But her move does not moot her claim, and we briefed that as well, the Collingswood case and other cases. I didn't say it was moot. I was just asking what, you know, just how one— there seems to be an assumption here that because if— the child's mind was violated, that the child had inferior services in the private school. Oh, no. We are not arguing the services were inferior at the private school. We're arguing that the public school did not offer an individualized education plan even once she was identified and deemed eligible. So there's—the period of time is easiest looked at as two parts. One part when she was trying to establish eligibility, which didn't occur again until June of 2017, and then forward from 2017. And critical to that is certainly by June of 2017, Houston had acknowledged and finally agreed she was eligible, and so had Parland. And yet, violating another statute, the individualized education plan was not offered to the student until September 27 of 2017, which is the start of her fifth-grade year. I still don't understand the scope of the relief that you're seeking. I mean, is it declaratory somewhat in nature in terms of here's all the stuff that was bad, yeah, yeah, yeah, and then back to the district court? But at bottom, it does seem to be some request for relief that's going to have a dollar sign. So what's the quantified dollar sign amount for education in Massachusetts or wherever? We're not seeking reimbursement for it. There's no claim embedded here for reimbursement of tuition anywhere. So at the end of the day, if you want on all your claims, there's no other than, I guess, attorney's fees or something, but I'm talking about some amount that was expended because these two systems didn't do X. Correct, but the reimbursement in terms of moving forward is offset by the fact that the state of Massachusetts, the district there has been providing programming for the student. Let me just ask you about your claims against the Houston Independent School District. As I recall, correct me if I'm wrong, the district court found that these claims were time barred. Correct. So can you tell me in your opening brief, do you address the time bar issue? We did. We did at pages, I think it was 65 and 66. We viewed that issue as a remedy question because if the period of time is one year to request a due process hearing, this family learned about whether or not she was eligible by a May 17, 2017 email. That's at record 51645169. They filed for hearing in June of 2017. So they knew for sure they had an eligibility issue at that time, and they filed promptly. You make that argument in your opening brief? Yeah. Thank you. And we cited to the GL versus Legionnaire case. Thank you. Thank you, Your Honor. And you have an opportunity for rebuttal. Thank you. Thank you. Okay, well, first from Mr. Brush, HISD. Good morning, and may it please the court. Jonathan Brush, and with me is my co-counsel, Amy Tucker, for the Houston Independent School District. Picking up where you left off, Judge Duncan, the statute of limitations finding that was made by both the hearing officer and the district court was not sufficiently addressed in the appellant's opening brief. The appellant failed to meet the obligations under Rule 28 to brief the issue, to squarely confront the district court's reasoning with citation to the record and citation to legal authority. It simply was not done in the opening brief, and that forfeits the issue. Now, that's dispositive of all of the appellant's child fine claims. Well, do you disagree that she cites to page 65 and 66 of the opening brief, saying that's not sufficient? Yes, Your Honor. It is not sufficient because it doesn't confront the underlying reasoning. There's no analysis of how the hearing officer's factual findings were wrong. So let's assume for a second that the issue had not been waived. Then the appellant would have the burden to show that the factual findings made by the hearing officer were clearly erroneous, and that's a very tough burden to meet. Under this court's precedent in the Lisa M v. Leander ISD case, the hearing officer's factual findings that are predicated to an extent on credibility determinations are entitled to great deference. There is no effort to show how the underlying factual findings that showed that the parents were on notice of their obligation to seek a due process hearing within one year were wrong. When were they on notice? Remind me. So the parents received, and the hearing officer found, that they received their notice of procedural safeguards beginning in 2009-2010, and that's a document that provides statements of the rights that a parent of a special education child has and also a warning that in Texas there's a one-year statute of limitation for a due process claim. The hearing officer made factual findings that the parents received those notices in 2009, that they had received them again, and the mother conceded that she had probably received the notice. And so the hearing officer made discrete factual findings that the notice was initially provided in 2009. So they were on notice of the statute of limitations from the get-go. And what that means is that at any time the parents believed that they were not getting the services their child was entitled to, they knew they had a remedy potentially available to them by filing for a due process hearing. They did not do that until the summer of 2017. And so the hearing officer in the district court correctly looked back from that date, the date of filing, and found that any child fine claim that arose more than a year before that date was time-bombed. Let's say, assuming for the sake of argument, we agree with you on that point, what happens to the claim? Are there any claims left against HISD? There really are not. The only other claim is this sort of amorphous compensatory education claim, but it doesn't fit because at the time the due process hearing was held, the child was a resident of Pearland. Pearland owed any duty to provide a free and appropriate public education to the child. What HISD owed the child was merely proportionate share services. And the statute and regulations are clear that a complaint about the provision of proportionate share services is not properly brought in a due process hearing. It's brought through a TEA complaint process. And for whatever reason, that process was never, the parents never availed themselves of that process. So the due process hearing context that they pursued in the summer of 2017 was the wrong form. Remind me, does the SEHO or the district court address that sort of alternative point? They do. They address that alternative point in holding that the only potential relief available to the parents in that due process hearing was moot, because the only thing they were entitled to was an independent educational evaluation. Is that, I can ask the other side in rebuttal, but is that mootness, is that separate mootness point addressed in the briefing? It's not, again, it's not addressed squarely in the appellant's brief. And I think they have waived the challenge to that finding for failing to adequately brief it. It was in the district court's order that that prong of the claim was moot, because no further relief could be granted. It's simply not challenged in the opening brief. This court in D.C. versus Kline Independent School District held that a claim, a challenge to a mootness claim is waived if it's not in the party's opening brief. I suppose we disagree with you on all the time bar stuff. What's the next step in the child find argument? Of course, we think you should agree with us. But if the court were to disagree, because a full hearing was never held on the child find claims, the ones that were found to be time barred, if the court were to reverse that finding, then I think the remedy would be a remand to the district court and perhaps in turn to a hearing officer to have a full hearing on the merits. Because those claims are not exhausted beyond the question of limitations. We wouldn't address that then. This court would not be in a position to make those sorts of findings because there isn't an administrative record to review as to Houston ISD that goes beyond the question of limitations. And with respect to the mootness claim, if the court were to disagree, there would have to be some additional relief provided by statute or regulation for a non-resident student privately placed in a private school. And there simply is not an additional relief that was not received. So in the first instance, the claims against Houston ISD have been waived. And the court should affirm on the basis that they have been waived due to insufficient briefing. If the court were to treat the claims as properly briefed, they should be affirmed because the district court correctly held that limitations barred the lion's share of the child fine claims against Houston ISD and that all remaining claims are moot. If there are no further questions from the panel, I'll return my time to the court. Okay. Thank you. Ms. Schneider-Vogel, Paraland ISD. Yes. Good morning. May it please the court. I'm Mary Schneider-Vogel, and I represent Paraland ISD. Tanya Dawson, general counsel for Paraland ISD, is with me today. The appellants couched this case in their pleadings as well as during their oral argument as a violation of the hearing officer and the district court in placing the child fine obligation on the parents. That is not the case. What this case is about is the opportunity that the parents had to place their child in private school. That is a decision they were able to make, and they did make, and then not come forward to the Paraland Independent School District until several years later. The general child fine obligation for the district to identify and locate students within the district and in private schools within the district was clearly...was not violated. And if we look at 7862 to 7865, it's the evidence to support the determination by the court that Paraland ISD had a robust and comprehensive child fine system in place. I was talking to the counsel on the other side about the notice issue. The e-mail that went to Yancey wasn't responded to because Yancey resigned. What is your argument with respect to what triggered the child fine duty in Paraland? We believe that the child fine duty was not triggered until May 15th when the parents actually sent a letter to Pam Wilson and asked for services and asked for the child to be identified. That's May of 2017? Correct. Why wouldn't the e-mail to Yancey have done it, even though she resigned and didn't respond? If the e-mail actually was a request for services and for testing, which it's questionable whether it was, our argument is, number one, that is time barred because the parents knew that Ms. Yancey and nobody in the district responded to her right after they didn't respond. In fact, the next day HISD responded and the parents chose to do the evaluation through HISD. So we believe that that date is barred by the statute of limits. So if we agreed with them that the proper date— well, if we said the proper date for triggering child fine is January 2016 because of this e-mail, your first response to that would be, well, if it were, then the claim is time barred. Yes. Do you have any other arguments on that? Right. Our second argument would be what the district court said, that it just wasn't noticed. It didn't put the district in notice. There was no follow-up. The evidence in the district court was, and in the record, was that nobody received that e-mail. It was not forwarded by Ms. Yancey. We don't even know if Ms. Yancey received it. We don't know if she read it. And there was just no evidence in the record that indicates that that was received by the district. So it wasn't properly— Was she not an agent of the district? She was an agent of the district, but we don't know what happened to that e-mail. That e-mail could have been received. And I think that the answer is, and the information is, you have to look at what happened after that. When the parents didn't receive any follow-up from Paraland ISD, they weren't contacted, they went, and I said, where they had the opportunity to do, HISD evaluated this child. So it wasn't an intent for the parent to receive services or an evaluation from Paraland. So that second argument is, well, it wasn't really noticed. Is there another argument? Suppose I disagreed with you on that. I'm sorry? Suppose I thought, oh, well, the January 26th e-mail was sufficient notice to Paraland. Does that mean that you lose on the child find issue? No, we do not lose because, again, the parents' actions were not to present themselves to Paraland ISD. They went in a different direction, and that's absolutely their discretion to do so. So after the court, if we look at the first date and the second date, the 2014 when they moved into the district, the 2016 when they sent that e-mail and did no follow-up, the next question is, or the next date that the court looked at, was when in contact with Emily Gibbs. Emily Gibbs was a VI teacher in Paraland ISD who coincidentally was asked to do an IEE by HISD, an independent evaluation after the parents disagreed with the evaluation provided by HISD. The court imputed that knowledge of Emily Gibbs to the district in April of 2017, and we disagree with that finding for several reasons. One, there's a confidentiality provision in the regulation that would not have allowed Paraland to review, to receive that information and to share it. So Emily Gibbs, who is not working for Paraland ISD, she's working through HISD, the confidentiality provision would prevent her from sharing that information with Paraland ISD, and Ms. Wilson testified to that, and the regulations and the comments of the regulations support that, and that's why when the regulation was promulgated, they actually added a new statute, a new regulation that said that without consent, that information cannot be shared. So we believe, number one, it shouldn't be imputed, but more importantly, we believe that Paraland did not have a child find obligation, and that's what the amicus brief from TASB raised that issue, and we raised it in our brief as well. This 300.131 specifically says that it's the district where the private school is located that has the child find obligation. That would be HISD. If the parents come forward and ask for the school district of residence to test and to provide faith, at that time, yes, then the school district of residence does have a child find obligation. But this court, most of the child find cases that this court has decided, the OW case, the Krawitz case, the Woody case, are all situations in which the child is enrolled in the public school, and they're looking at when did the school district have a suspicion that the individual student had a disability, either by the behavior of the students engaging in or the academic progress or lack of progress. In this case, Paraland did not know this child existed. She was going to private school, and that's absolutely the parent's prerogative. So there was nothing that would put Paraland on notice, and the regulations, the commentary, and the commentary actually cited by Judge Stacey in his decision, all is premises. I'm sorry? Judge Stacey is a female. I'm sorry, Judge Stacey, sorry. And adopted and approved by the court, the district court, found that it was upon request by a parent that the school district or residence then has to proceed with an evaluation and an ID. Just so I can understand, the argument that PISD didn't have a child find duty to begin with, that is separate and apart from the argument that we were having earlier about notice to PISD and whether the January 2016 email constituted notice. Is that right? Not really, because even if that notice, if that January letter did not ask for an evaluation, and it is questionable whether it did ask for an evaluation, because they said they were in private school, they were asking for information. If that was not a request to Paraland for an evaluation, then Paraland did not have a child find obligation. They only had a child find obligation when the parent comes forward and asks, why this child is enrolled in private school? If they enrolled in Paraland, of course we would have an obligation to move forward. So the only reason that 2016 date might have triggered if we had actually received it and it had given us proper notice is if that email constituted a request for an evaluation. With regard to how the school district responded in May once the parents came forward and said we wanted an evaluation in services, the record is completely filled with evidence indicating how quickly Pam Wilson, who was the receipt of the email, worked to set up an evaluation, to have a meeting, to have people who know about visual impairment meet on June 1st with the parents and tell them the services that they would receive. I see that my time is up. I think so. Thank you. Ms. Collins? Yes, good morning and may it please the court. Allison Collins, Assistant Attorney General for the state of Texas on behalf of the Texas Education Agency. Plaintiffs asserted two claims against TEA, a denial of services claim alleging that TEA was responsible to provide a free appropriate public education directly to SS, and a child fight claim premised on one of TEA's monitoring parameters related to special education enrollment. Both of these claims fail because, as discussed by my colleagues, plaintiffs' alleged idea violations are largely barred by the applicable statute of limitations and both school districts otherwise satisfied their obligations toward SS. Since neither school district violated child find nor denied SS services, the district court properly held that there was no viable claim against TEA. When can the state agency be sued under IDEA for a denial of services? It can be done, right? It can, but in very limited circumstances. It's typically when the local education agency is either unwilling or unable to provide services to the student and provides the state agency notice of its inability to do so. What's the statute provision? Yes, so that falls under... The statutory provision is 34 CFR 300.227, and it was also discussed by this court in the St. Tammany Parish case. None of those circumstances occurred here. Rather, Hareland ISD was both willing and able to provide SS with the needed services and offered her a free appropriate public education. Therefore, there was no obligation for TEA to provide services directly to the student. It sounds like that claim, correct me if I'm wrong, is that claim not dependent on the claims against HISD and PISD? In other words, that's sort of a standalone claim against the state? Or not? No, I read it as being related to the underlying claims, for the most part. Now, plaintiffs do assert that in 2018, they reached out to TEA's litigation counsel and requested direct services for the student. However, at that point in time, these claims had already been heard by a hearing officer, and they had found no idea of violation. TEA is bound by that hearing officer's decision as a final decision under IDEA. Unless or until the district court overruled it, there was no basis for TEA to provide those direct services. What about the child find claim? That's the denial of services, right? Child find? The denial of services is separate. Yes, separate. Moving to the child find claim itself. As has already been discussed, per 34 CFR 300.131, child find of parentally placed private school students is the responsibility of the school district where the private school is located. In this instance, Houston ISD. TEA does not conduct direct child find activities. Rather, it is tasked with oversight and monitoring of school district compliance with IDEA. As pertinent to this case, there is one way that TEA carries out this role, which courts have described as serving as a backstop for school district compliance with IDEA obligations. Now, TEA administers two complaint mechanisms that permit parties to seek relief for alleged IDEA violations from school districts, including the procedural due process complaint that was pursued in this instance. Here, the hearing officer and the district court both properly found that Houston ISD fulfilled its child obligations toward SS, to the extent that they were out of time barred. And therefore, there was no child find violation to serve as the basis for a claim against TEA related to TEA's oversight of that school district's compliance with IDEA. And case law is clear that, absent that underlying violation of a denial of educational benefits, there is no remedy or claim that can proceed. It is merely a procedural violation. So without a violation by either Houston or Parland, all that would exist against Texas Education Agency is a procedural violation based on its actions or inactions, which would not entitle the plaintiffs to any relief. Now, plaintiff brought up the Texas School for the Visually Impaired's registry as it relates to child find, and that somehow TEA should require school districts to use that registry as part of their child find activities. But as part of that argument, plaintiff is conflating two separate requirements within 20 U.S.C. 1412a3a in an attempt to create an obligation for TEA to track every student with a visual impairment from year to year and from location to location to determine if they have been appropriately identified and or provided with services. And this is not what the law requires. Rather, as set forth in 34 CFR 300.111, there are two distinct legal requirements within the child find statute. One is child find. The other is the practical method. The practical method requires TEA to have a system in place to account for the children that have been found, to account for the students that have been identified and are currently receiving educational services so that it can substantiate its request for IDEA funding. Again, they've both been found and are receiving services. And the Texas School for the Blind's visually impaired registry operates similarly. It is a child found database. It requires school districts every year to register the students with visual impairments that are currently receiving services and provides an annual snapshot of the students for the purposes of providing additional materials such as braille materials, audio books, material specific for students with visual impairments. Even if those kids are in private schools? Yes, if they are being provided services by a school district. The registry reflects students that are registered on the registry by a public school district who are currently receiving special education or related services. So if they were receiving proportionate share services through a public school district, they would be included on the registry in that year. But the registry does not track students from year to year or from location to location. In fact, if you look at the consent form for the registry, which is found at the record at 2583, there is no residency information provided for the student. It is solely done by the school district and it reflects, again, the students for that year that are receiving special education services. Unless there are any other questions from the panel, TEA requests that this court affirm the decision of the district court and dismiss all the claims against TEA. Thank you. Okay, thank you. Ms. Trey? Uh-oh. Thank you, Your Honors. First of all, just to clarify for the court, 34 CFR 300.140B is the citation about being able to ask for a special education hearing concerning child crime, even if you're in a private school. So we did not choose the wrong forum because our issue was eligibility and child fine when we began the hearing in 2017. That was a huge issue. We didn't know she was eligible. That goes to the mootness point? Pardon me? That goes to the mootness point? It goes to the mootness point. It goes to the issue of why it was we were in a special education hearing as opposed to Houston's argument that we should have filed a complaint with the state agency. Is that an argument that you make in your brief? Yes. With respect to the Houston argument, the due process hearing, as I said, was about child fine. And when you bring a due process hearing, the hearing officers are permitted, and there's no exception if it's a hearing about child fine eligibility for a child in private school, hearing officers can award all appropriate relief. Separate and distinct from the issue of whether there could be relief granted for the prior years, the hearing officer in the district court wrongly assumed that there could be no relief for this delayed eligibility. This is really important because the child was known to Houston, and as early as June of 2016, Houston met with the family. The family asked for an independent educational evaluation, and Houston told them to wait until the fall. That's contrary to how this court interpreted the independent evaluation process in the Seth B. case. The hearing officer in the district court then just assumed, well, because Houston eventually gives an independent educational evaluation, that's enough. But in fact, the IDEA does not say that. It says what? It says all appropriate relief. 20 U.S.C. 1415 I.C. 3 says in these cases, it's all appropriate relief. So our contention is it's short-sighted to say, well, we delayed finding you eligible for a year and a half, and all you get is the independent educational evaluation. The hearing officer relied on another hearing officer's opinion from a few years earlier. That's the only case law they had to rely on, and there's no other case law that supports that view, and it couldn't be because it's all appropriate relief. It's not limited to an evaluation. Secondly, Houston, and this is significant. Yeah, but what would appropriate, if at this point you're having a due process hearing, right, and you haven't had the independent evaluation, then what other relief would there be other than compelling an independent evaluation? Well, there could be relief in terms of reimbursement for the private school, for private evaluations. This family had paid for a couple of different private evaluations before they obtained the independent. They also had paid for private school and related expenses. But what's your best case for saying that that relief should have been awarded at that point? My best case is Forest Grove. My best case is the statute itself, all appropriate relief. Well, normally the solution for a violation of due process is to give process. That's why I'm . . . so all appropriate relief regarding process. Well, yes, Your Honor, and certainly the independent evaluation did provide some relief, but that relief is not limited was sort of my point. Okay. Real quickly, at Record Access 13-2636 is an email from Dorothy Vetrano from Houston which I wanted to bring to the Court's attention. This is October of 2016, in which Houston's own teacher, the visually impaired, says she will qualify for visual impairment services, October of 2016. Yet October 2016 through June of 2017, her entire fourth grade year, she's not eligible. That delayed eligibility is inconsistent with this Court's jurisprudence. I see my time has expired. Thank you. All right, thank you very much. It's a very complex case from our standpoint. And that concludes the arguments for this week, and in a second we will leave and the Court will be dismissed. Thank you very much. Thank you.